# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| Victoria Starr-Harris, individually and on behalf of others similarly situated, | Case No.: |
| | **CLASS ACTION** |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR** |
| v. | 1. **VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 ET SEQ.; AND** |
| The Altitude Group, LLC d/b/a Core Home Security, LLC, | 2. **VIOLATIONS OF FLORIDA STATUTE § 501.059** |
| Defendant. | **JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Plaintiff, Victoria Starr-Harris, brings this action against Defendant The Altitude Group LLC d/b/a Core Home Security, LLC., ("Defendant"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 and Florida Statute § 501.059.

2. This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., (the "TCPA") and Fla. Stat. § 501.059.

3. Defendant is a security installation and monitoring company. In an attempt to solicit consumers, Defendant engages in telemarketing phone calls.

4. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies.

5. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

6. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in its entirety.

7. Unless otherwise stated, all the conduct engaged in by Defendant took place in the Southern District of Florida.

8. Any violations by Defendant was knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

9. Unless otherwise indicated, the use of Defendant's names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant named.

### JURISDICTION AND VENUE

10. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call-in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of CAFA diversity jurisdiction and CAFA jurisdiction are present.

11. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is

subject to the court's personal jurisdiction, and because Defendant provides and markets its services, as well as attempts to collect from consumers within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the State of Florida and, on information and belief, Defendant has made the same phone calls complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Florida.

## PARTIES

12.     Plaintiff is a natural person residing in the City of Davie, County of Broward, State of Florida.

13.     Defendant is a company headquartered in Boca Raton, Florida, conducting business in security installation and monitoring.

## THE TCPA

14.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system **or artificial or prerecorded voice**; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

15.     In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

16.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

17.     In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers. See In the Matter of Rules &

Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

18.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates."  In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

19.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).    In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  See Golan v. Veritas Entm't, LLC, 788 F.3d 814, 820 (8th Cir. 2015).

20.    "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services."  Golan, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12);  In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

21.    The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA.  See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003).  This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future.  Id.

22.    In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.  See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶ 136 (2003).

23.    If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent.  See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls.")

24.    As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'"  Van Patten v. Vertical Fitness Grp., No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

25.    The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) *et seq*., affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

26.    Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the

purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

27.     47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period on their phone, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

28.     Decades after the TCPA passed into law, it is still unfortunately the case that "[m]onth after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

//

29.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves . . . the playing of a recorded message when a connection is completed to a number without the prior express written consent of the called party." Fla. Stat § 501.059(8)(A).

30.     The statute defines "telephonic sales call" as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(I).

31.     A person will be defined as a "called party" if they are a "person who is the regular user of the telephone number that receives a telephonic sales call," under Fla. Stat. § 501.059(1)(A).

32.     An "unsolicited telephonic sales call" is one that is made other than in direct response to the express request of the person who is called. under Fla. Stat. § 501.059(4)(K).

## GENERAL ALLEGATIONS

33.    At all times relevant, Plaintiff was an individual residing within the State of Florida.

34.    At all times relevant, Defendant conducted business in the State of Florida.

35.    Plaintiff has been on the National Do Not Call Registry since October 3, 2016.

36.    Plaintiff's phone is used for residential purposes.

37.    Defendant is required to check the National Do Not Call Registry before attempting to call. 47 U.S.C. § 227(c)(3)(F).

38.    On or around June 12, 2023, at 9:35am, Plaintiff received a call from Defendant. Once Plaintiff answered the phone call a prerecorded message began playing. Plaintiff is informed and believes it was a prerecorded voice call because of the robotic nature of the voice calling.

39. That same day, at 10:58am, Defendant called Plaintiff again. Plaintiff answered and once again heard the same prerecorded voice. In this phone call Plaintiff talked to an avatar voice who then transferred her to Cory, an agent of Defendant. In this conversation, Plaintiff inquired who it was that was calling her.

40. Subsequently, Cory sent a text message to Plaintiff. The text identified "Cory" with Core Home Security. The text went on to describe equipment provided with an installment service, along with the brand of equipment.

41. Plaintiff responded requesting that Defendant not pull her credit and Defendant responded that it had not yet pulled any credit.

42. Plaintiff received the phone calls and text message within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district. Upon information and belief, Defendant made other phone calls to individuals residing within this judicial district and throughout the United States.

43. At no point in time did Plaintiff provide Defendant with her express written consent to be contacted. This is in violation of 47 U.S.C. § 227(a)(5).

44. Defendant's unsolicited phone calls and text message caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

45. Defendant's phone calls also inconvenienced Plaintiff and caused disruption to her daily life.

46. Defendant's unsolicited phone calls caused Plaintiff actual harm. Specifically, Plaintiff estimates that she spent numerous hours investigating the unwanted phone calls including how they obtained his number and who the Defendant was.

47. Furthermore, Defendant's phone calls took up memory on Plaintiff's cellular phone. The cumulative effect of unsolicited phone calls and voicemails like Defendant's poses a real risk of ultimately rendering the phone unusable for other purposes as a result of the phone's memory being taken up.

48. In a recent decision en banc by the Eleventh Circuit, the Court found that plaintiffs have a concrete injury under Article III with as little as one call or text from a defendant. *Drazen v Godaddy.com, LLC*, USCA11, Case No. 21-10199 (11th Cir. en banc July 24, 2023). The Eleventh Circuit specifically found:

> In sum, then, we hold that the harm associated with an unwanted text message shares a close relationship with the harm underlying the tort of intrusion upon seclusion. Both harms represent "an intrusion into peace and quiet in a realm that is private and personal." Id. at 462 n.1. For that reason, the harms are similar in kind, and the receipt of an unwanted text message causes a concrete injury. While an unwanted text message is insufficiently offensive to satisfy the common law's elements,

Congress has used its lawmaking powers to recognize a lower quantum of injury necessary to bring a claim under the TCPA. As a result, the plaintiffs' harm "is smaller in degree rather than entirely absent." Hunstein, 48 F.4th at 1249.

## CLASS ALLEGATIONS

### PROPOSED CLASS

49. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

50. Plaintiff brings this case on behalf of the three Classes defined as follows:

<u>The TCPA Prerecorded Voice Class</u>

All persons within the United States who received any solicitation/telemarketing phone calls from Defendant to said person's cellular telephone made through the use of an artificial or prerecorded voice call and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

<u>The TCPA DNC Class</u>

All persons within the United States registered on the National Do-Not- Call Registry for at least 30 days, who had not granted Defendants Prior express consent nor had a prior established business relationship, who received more than one call made by or on behalf of Defendants that promoted Defendants' products or services, within any twelve-month 18 period, within four years prior to the filing of the complaint.

<u>The FTSA Class</u>

All persons within the State of Florida who received any solicitation/telemarketing phone calls with a recorded message when a connection was completed from Defendant to said person's cellular telephone and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

51. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

**NUMEROSITY**

52. Upon information and belief, Defendant has placed prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent as well as to thousands of consumers that were registered on the national do-not-call registry. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

53. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

///

**COMMON QUESTIONS OF LAW AND FACT**

54. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(1) Whether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones using a pre-recorded voice;

(2) Whether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones;

(3) Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;

(4) Whether Defendant's conduct was knowing and willful;

(5) Whether Defendant is liable for damages, and the amount of such damages;

(6) Whether Defendant should be enjoined from such conduct in the future; and

(7) Whether Plaintiff and the putative class members were on the do-not-call registry at least 30 days prior to being called by Defendant.

55. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely made phone calls to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

56. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

57. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

58. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by

the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

59. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
### VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(B)
#### (ON BEHALF OF PLAINTIFF AND THE CLASS)

60. Plaintiff re-alleges and incorporates paragraphs 1-47 of this complaint as if fully set forth herein.

61. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or pre-recorded voice … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

62. Defendant – or third parties directed by Defendant – made non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined below using an artificial or prerecorded voice.

63. These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

64. Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using artificial or pre-recorded voice messages to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

65. Defendant knew that it did not have prior express consent to make these calls and knew or should have known that it was using an artificial or prerecorded voice. The violations were therefore willful and knowing.

66. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id*.

## COUNT II
## KNOWING AND/OR WILLFUL VIOLATION OF THE TCPA, 47 U.S.C. § 227(B)
### (ON BEHALF OF PLAINTIFF AND THE CLASS)

67. Plaintiff re-alleges and incorporates paragraphs 1-47 of this complaint as if fully set forth herein.

68. At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

69. Defendant knew that it did not have prior express consent to make these calls and knew or should have known that its conduct was a violation of the TCPA.

70. Because Defendant knew or should have known that Plaintiff and Class Members had not given prior express consent and/or revoked consent to

receive artificial or pre-recorded voice calls, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

71. As a result of Defendant's violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT III
### Negligent Violations of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiff and the DNC Class)

72. Plaintiff re-alleges and incorporates paragraphs 1-47 of this complaint as if fully set forth herein.

73. The foregoing acts and omissions of Defendants constitutes numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above cited provisions of *47 U.S.C. § 227(c)*, and in particular *47 U.S.C. § 227 (c)(5)*.

74. Defendant initiated calls to Plaintiff and the putative class more than 30 days after they were registered on the national do-not-call registry.

Defendant made more than two calls to each of Plaintiff and the putative class members within a 12-month period.

75. As a result of Defendants' negligent violations of *47 U.S.C. § 227(c)*, Plaintiff and the DNC Class Members are entitled to an award of $500.00 for each and every negligent violation, pursuant to *47 U.S.C. § 227(c)(5)(B)*.

76. Plaintiff and the DNC Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**COUNT IV**
**Knowing/Willful Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the DNC Class)**

77. Plaintiff repeats and incorporates by reference into this cause of action paragraphs 1-47 of this complaint set forth in the paragraphs above.

78. The foregoing acts and omissions of Defendant constitutes numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of *47 U.S.C. § 227(c)*, in particular *47 U.S.C. § 227 (c)(5)*.

79. As a result of Defendants' knowing and/or willful violations of *47 U.S.C. § 227(c)*, Plaintiff and the DNC Class members are entitled an

award of $1,500.00 in statutory damages, for each and every willful violation, pursuant to *47 U.S.C. § 227(c)(5)*.

80. Plaintiff and the DNC Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## COUNT V
### VIOLATIONS OF FLA. STAT. § 501.059
#### (ON BEHALF OF PLAINTIFF AND THE CLASS)

81. Plaintiff re-alleges and incorporates paragraphs 1-47 of this complaint as if fully set forth herein.

82. Defendant – or third parties directed by Defendant made non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class using a recorded voice in violation of Fla. Stat § 501.059(8)(A).

83. Under Fla. Stat § 501.059(1)(G), prior consent includes the signature of the called party, the telephone of the called party, as well as clear authorization to the person making or allowing the telephonic sales call to make the call.

84. Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when these telephonic sales calls were made. *Id.*

85. Defendant has, therefore, violated Fla. Stat § 501.059(8)(A) AND Fla. Stat § 501.059(1)(G) by using an artificial and/or pre-recorded voice message to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

86. Defendant knew that it did not have prior express consent to make these calls. The violations were therefore willful or knowing.

87. As a result of Defendant's conduct and pursuant to Fla. Stat § 501.059(10)(B), Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

**WHEREFORE**, Plaintiff, on behalf of herself and the other members of the Class, prays for the following relief:

    a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227 and Florida Statute § 501.059;

    b. An injunction prohibiting Defendant from using an artificial or prerecorded voice to call message telephone numbers assigned to

cellular telephones without the prior express permission of the called

party;

c. An award of actual and statutory damages;

d. An order naming Plaintiff as the class representative;

e. An order naming Plaintiff's counsel as class counsel; and

d. Such further and other relief the Court deems reasonable and just.

## TRIAL BY JURY

88..Pursuant to the seventh amendment to the Constitution of the United

States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: February 14, 2024                    Respectfully submitted,

BY: /S/ RYAN L. MCBRIDE_____

RYAN L. MCBRIDE, ESQ.
TRIAL COUNSEL FOR PLAINTIFF

Mohammad Kazerouni
Florida State Bar No. 1034549
**Kazerouni Law Group, APC**
245 Fischer Ave., Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
mike@kazlg.com

Ryan L. McBride
Florida State Bar No. 1010101
**Kazerouni Law Group, APC**
301 E. Bethany Home Road
Suite C-195
Phoenix, AZ 85012
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
ryan@kazlg.com